ROSEN & ASSOCIATES, P.C.
Proposed Attorneys for the Debtors
and Debtors in Possession
747 Third Avenue
New York, NY 10017-2803
(212) 223-1100
Sanford P. Rosen
Alice P. Ko

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x

In re                                                                    Chapter 11

SALOMAO LANIADO and                                   Case No. 14-43854-nhl
MARGOLIT LANIADO,

                                 Debtors.
-----------------------------------------------------------x

**FIRST AMENDED DISCLOSURE STATEMENT WITH RESPECT TO THE**
**DEBTORS' FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION**

> **THIS IS NOT A SOLICITATION OF ACCEPTANCE OR**
> **REJECTION OF THE DEBTORS' PLAN.  ACCEPTANCES OR**
> **REJECTIONS MAY NOT BE SOLICITED UNTIL A**
> **DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE**
> **BANKRUPTCY COURT.  THIS DISCLOSURE STATEMENT IS**
> **BEING SUBMITTED FOR APPROVAL BY THE**
> **BANKRUPTCY COURT.**

Salomao Laniado and Margalit[1] Laniado, the debtors and debtors in possession

(each a "**Debtor**," and collectively, the "**Debtors**"), submit this First Amended Disclosure

Statement (the "**Disclosure Statement**") pursuant to section 1125 of Title 11, United States

Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**") and Rule 3017 of the Federal Rules of

Bankruptcy Procedure (the "**Bankruptcy Rules**"), in connection with the solicitation of

acceptances or rejections of their First Amended Chapter 11 Plan of Reorganization, dated April

---
[1] Although Margalit Laniado's first name is spelled "Margolit" in the case caption, "Margalit" is the correct spelling.

7, 2015 (the "**Plan**"), a copy of which is annexed hereto as Exhibit "A."[2]  The Plan has been

filed with the United States Bankruptcy Court for the Eastern District of New York (the

"**Bankruptcy Court**").

        **THIS DISCLOSURE STATEMENT IS NOT INTENDED TO REPLACE A CAREFUL AND DETAILED REVIEW AND ANALYSIS OF THE PLAN BY EACH HOLDER OF A CLAIM ENTITLED TO VOTE THEREON, BUT IS INTENDED TO AID AND SUPPLEMENT SUCH REVIEW.   THE DESCRIPTION OF THE PLAN HEREIN IS A SUMMARY ONLY AND HOLDERS OF CLAIMS AND OTHER PARTIES IN INTEREST ARE CAUTIONED TO REVIEW THE PLAN ITSELF TO UNDERSTAND COMPLETELY ITS PROVISIONS.   THIS DISCLOSURE STATEMENT IS QUALIFIED ENTIRELY BY REFERENCE TO THE PLAN.   THE TERMS OF THE PLAN CONTROL WHERE ANY INCONSISTENCY EXISTS BETWEEN THE PLAN AND THE DISCLOSURE STATEMENT. THE APPROVAL OF THE ADEQUACY OF THE DISCLOSURE CONTAINED IN THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL OF THE MERITS OF THE PLAN.**

        **THE PLAN CONSTITUTES A VALID AND LEGALLY BINDING AGREEMENT ENFORCEABLE IN ACCORDANCE WITH ITS TERMS AND CONDITIONS.**

        This Disclosure Statement and the Plan remain subject to modification and

amendment.  All financial information provided herein constitutes, and all projections and

assertions made by the Debtors herein are based on, the best information available to the Debtors

as of the date of the filing of the Disclosure Statement and remain subject to revision.  The

Debtors will provide any missing information indicated as missing on or before the date of the

hearing on the Disclosure Statement, such other date as set forth in the Plan, or as otherwise

directed by the Bankruptcy Court.

        By order dated _____, 2015, the Bankruptcy Court has approved

this Disclosure Statement as containing "adequate information."

---

[2] Capitalized terms not defined herein have the same meaning ascribed to them in the Plan.

# ARTICLE I
# INTRODUCTION

## A. Background & Litigation History

The Debtors, who are husband and wife, filed their voluntary Chapter 11 petition on July 29, 2014 (the "**Petition Date**"). The Debtors and their five children reside in their home located at 2105 Ocean Parkway Brooklyn, New York 11223(the "**Home**"), which is the Debtors' primary asset. The Home is owned by Margalit Laniado, and has a value of approximately $3.2 million.[3] In addition, Salomao Laniado owns real property located at 2109 East 7th Street, Brooklyn, New York 11223 (the "**Investment Property**"), which has a value of approximately $750,000, according to an appraisal commissioned by EMC Mortgage Corp. ("**EMC**"), the holder of the mortgage on the Investment Property. A copy of EMC's appraisal report, which is dated September 2, 2014 and has an effective date of August 26, 2014, is attached hereto as Exhibit "B."

There are two mortgages on the Home. The first mortgage on the Home is held by Maspeth Federal Savings ("**Maspeth Federal**") in the amount of approximately $350,000.00. The second mortgage is held by Fairmont Capital LLC ("**Fairmont**"), in the amount of approximately $1.9 million.[4] EMC holds a mortgage on the Investment Property in the amount of approximately $1.3 million.

The Debtors purchased the Home in 1998 and at that time, the Debtors obtained a first mortgage loan from Maspeth Federal for $350,000.

---

[3] Although the appraisal of Courtwood Capital (as defined below in the text), which is discussed in its disclosure statement with respect to its competing plan, reflects a value of $3.5 million, the appraiser did not have access to the interior of the home. Moreover, a certificate of occupancy has not been issued and its absence will have a negative impact on the selling price.

[4] The Debtors have been informed that Fairmont recently sold its mortgage to Courtwood Capital (as defined below in the text). The Plan names Courtwood Capital as the holder of the first mortgage.

In November 2005, the Debtors obtained a second mortgage loan of $900,000 from Fairmont. This was a construction loan for the Home.  It was a "hard money loan" with a high interest rate of 12% per year.

In 2009 Fairmont Capital instituted a foreclosure action, *Fairmont Capital LLC vs. Laniado* (N.Y. Sup. Ct., Kings Cnty. Index No. 12386/2009) (the "**Foreclosure Action**") against the Debtors.

In October 2009, Salomao Laniado met with Fairmont and paid it $62,000 on account of arrears, which made the Debtors current on the $9,000 per month interest-only payments that were due to Fairmont.

At that time, Fairmont agreed that it would not pursue the Foreclosure Action as long as the Debtors invested more money into the construction to complete the Home, as this increased Fairmont's equity.  Fairmont stated that this way the Debtors would be better able to refinance the Home.   Further, Fairmont suggested that the Debtors place the Home's deed in Margalit's name, which the Debtors did.

The Debtors sold a residential property, two automobiles, and jewelry to remain current under their agreement with Fairmont and complete the Home, and also borrowed from family members in order to do so.  From October 2009 until November 2011, the Debtors invested an additional $500,000 into the construction of the Home, which was completed in November 2011.  To date, the Debtors have paid Fairmont a total of $400,000 of interest.

In November 2011 when the construction was completed, and the Home had increased significantly in value, the Debtors were served with a new set of pleadings, as Fairmont had determined to continue the Foreclosure Action.  At that time, Fairmont denied that it had agreed to suspend the Foreclosure Action as long as the Debtors continued to invest in the

4

Home's construction. Further, Fairmont sought to retroactively charge a default annual interest rate of 24% and demanded $1.2 million to cease the Foreclosure Action.  After much struggle, the Debtors were able to find a new lender, only to be informed by Fairmont that it required $1.4 million to halt the Foreclosure Action.  The Debtors were unable to satisfy the demand, and Fairmont ultimately obtained a judgment against the Debtors in the amount of approximately $1.8 million, representing $900,000 of principal plus $900,000 of interest at the default rate of 24%.

After years of construction, during part of which the Debtors' family resided in temporary housing, and investing hundreds of thousands of dollars, the Debtors' family faced eviction as a result of Fairmont's duplicitous behavior.

Additionally, in November 2014, EMC obtained a judgment of foreclosure against Salomao Laniado with respect to the Investment Property in *EMC Mortgage Corp. v. Laniado* (N.Y. Sup. Ct. Index No. 14292/2008), which judgment was entered notwithstanding the existence of the automatic stay that arose upon the Debtors' filing their bankruptcy petition. EMC has since agreed with the Debtors that such judgment had been entered in violation of the automatic stay.  The Debtors have filed a motion to vacate the judgment of foreclosure with the Supreme Court of the State New York, Kings County, and it is scheduled to be heard by that court on April 15, 2015.  As a result of the Debtors' financial difficulties and complying with Fairmont's instructions to direct their funds to the Home's completion instead of making monthly mortgage payments, the Debtors were forced to commence the instant chapter 11 case in order to avoid Fairmont's foreclosure.

**B.  Commencement of the Chapter 11 Case**

On the Petition Date, the Debtors filed their voluntary petition for reorganization pursuant to Chapter 11 of the Bankruptcy Code. The Debtors have continued in possession of their property and the management of their business affairs as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

**C.  Employment of the Debtors' Professionals**

By order of the Bankruptcy Court dated November 4, 2014, the Bankruptcy Court approved the Debtors' retention of Law Offices of Gabriel Del Virginia, *nunc pro tunc,* to the Petition Date.   On March 24, 2015, the Debtors filed an application to retain Rosen & Associates, P.C. as bankruptcy counsel in the place and stead of the Law Offices of Gabriel Del Virginia.  The order approving such retention is scheduled for presentment on April 17, 2015.

**D.  Filing of Schedules of Assets and Liabilities and Statement of Financial Affairs**

On September 11, 2014, the Debtors filed their Schedules of Assets and Liabilities, together with their Statement of Financial Affairs (collectively, the "**Schedules**"). The Debtors' Schedules are available on the Bankruptcy Court's website: www.nysb.uscourts.gov (log-in and password required) or from proposed counsel for the Debtors upon written request.

**E.  Establishment of a Claims Bar Date**

Pursuant to an order of the Bankruptcy Court entered on November 7, 2014, December 21, 2014 (January 26, 2015 for governmental entities) was established as the last date by which creditors may file proofs of claim in the Chapter 11 Case (the "**Bar Date**") and subsequently notice of the Bar Date was served on all creditors listed on the Debtors' creditor

6

matrix filed with the Bankruptcy Court as well as parties filing notices of appearance and creditors who had previously filed a proof of claim in the case.

As a result of the Bar Date, the Debtors have ascertained that the General Unsecured Claims, excluding the EMC Deficiency Claim (as defined below), total less than $60,000.00.  The amount of the net proceeds from the sale of the Investment Property will determine the amount of the EMC Deficiency Claim, *i.e.*, the difference between the amount of EMC's claim and the amount of its Secured Claim, which will approximate the amount of such net sale proceeds.  The Debtors estimate that the EMC Deficiency Claim may be as much as $640,000.  Thus, all General Unsecured Claims may be as much as $700,000.

**F.  The Debtor's November 21, 2014 Plan and Disclosure Statement**

On November 21, 2014, the Debtors filed a proposed chapter 11 reorganization plan accompanied by a proposed disclosure statement.

**G.  Fairmont's Motion for Relief from the Automatic Stay and Transfer of Claim**

On November 26, 2014, Fairmont filed its motion for relief from the automatic stay pursuant to 11 U.S.C. § 362(d).  The Debtors filed their opposition to the motion on January 11, 2015, and an amended objection to the motion on April 7, 2015.  A hearing on the motion was held on April 8, 2015 at 10:30 a.m.  The Court adjourned the hearing on the motion to May 13, 2015 at 2:30 p.m.

On March 19, 2015, Fairmont filed notice of the assignment of its claim to Courtwood Capital LLC ("**Courtwood Capital**").

**H.  Courtwood Capital's Proposed Plan and Disclosure Statement**

On March 24, 2015, Courtwood Capital filed a plan and disclosure statement.  In its plan, Courtwood Capital proposes that the Home be sold, the proceeds therefrom remitted to

7

Courtwood Capital, and the Debtors and their family be evicted from their Home.  The Debtors intend to oppose confirmation of Courtwood Capital's plan.

**I.**   **Means of Plan Implementation**

The Plan will be funded upon the Effective Date by Exit Financing, pursuant to which the Debtors will obtain a loan from Morris Bawabeh, of 2266 East 5th Street, Brooklyn, NY.  The loan proceeds to be disbursed on or about the Plan's Effective Date will enable the Debtors to make the Plan payments that will be due at that time.  The balance will be disbursed semi-annually in installments to enable the Debtors to make the installment payments due under the Plan.

**ARTICLE II.**
**THE PLAN OF REORGANIZATION**

**THE FOLLOWING IS A SUMMARY OF THE MATTERS CONTEMPLATED TO OCCUR EITHER PURSUANT TO OR IN CONNECTION WITH THE PLAN.  THIS DISCLOSURE STATEMENT ONLY HIGHLIGHTS THE SUBSTANTIVE PROVISIONS OF THE PLAN AND IS NOT, NOR IS IT INTENDED TO BE, A COMPLETE READING OF THE PLAN.  STATEMENTS REGARDING PROJECTED AMOUNTS OF CLAIMS OR DISTRIBUTIONS ARE ESTIMATES BY THE DEBTORS BASED ON CURRENT INFORMATION AND ARE NOT A REPRESENTATION THAT THESE AMOUNTS ULTIMATELY WILL BE CORRECT. THIS DISCLOSURE STATEMENT IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN ANNEXED AS EXHIBIT "A" HERETO.**

**A.**   **Treatment of Claims Under the Plan**

The Plan provides that distributions will be made only to holders of Allowed Claims.  The distribution for each Allowed Claim is calculated by reference to the treatment of the Class to which such Claim belongs.  The Allowed Claims that comprise the same Class will be treated the same under the Plan.

3.1          Unclassified Claims.

(a)          Allowed Administrative Claims:  Allowed Administrative Claims shall be

8

paid in Cash in the ordinary course and according to the terms and conditions of the respective

contracts with respect to those Claims. The Debtors do not believe that any such Claims exist.

(b)    <u>Administrative Professional Fee Claims</u>: Administrative Professional Fee

Claims shall be paid (i) in full in Cash in such amounts as allowed by the Bankruptcy Court on

the date such Professional Fee Claim becomes an Allowed Claim, (ii) upon such other terms as

may be mutually agreed upon between such holder of an Allowed Professional Fee Claim and

the Debtors or, on and after the Effective Date, the Reorganized Debtors, or (iii) in accordance

with the terms of any applicable administrative procedures order entered by the Bankruptcy

Court.  The Debtors estimate that such claims will aggregate approximately $100,000.

(c)    <u>United States Trustee's Fees</u>: Under the Plan, all United States Trustee

statutory fees arising under 28 U.S.C. §1930(a)(6) shall be paid in full, in Cash, in such amount

as they are incurred in the ordinary course of business by the Debtors. The Debtors/Reorganized

Debtors shall be responsible, through the entry of a final decree closing the Chapter 11 Case, for

the payment of United States Trustee quarterly fees, and, pursuant to 31 U.S.C. § 3717, any

interest assessed on unpaid Chapter 11 quarterly fees charged, assessed at the interest rate in

effect as determined by the Treasury Department at the time charges become past due; however,

if payment of the full principal amount is received within thirty (30) days of the date of the

notice of initial interest assessment, the interest assessed will be deemed waived.

(d)    <u>Allowed Priority Tax Claims</u>:  The holders of Priority Tax Claims shall be

paid in full in Cash on, or as soon as practicable after, the Effective Date.  The Debtors estimate

that Allowed Priority Tax Claims will aggregate approximately $5,000.

3.2    <u>Classified Claims</u>

Classified Claims against the Debtors are described below.  A Claim will be

9

deemed classified in a particular Class only to the extent that such Claim qualifies within the description of that Class and will be deemed classified in a different Class to the extent that any remainder of such Claim qualifies within the description of such different Class. Secured Claims are any Claims secured by a lien, to the extent of the value of the creditor's interest in the Debtors' estate's interest in the property subject to such creditor's lien, as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code.

Class 1 (Unimpaired): Class 1 shall consist of the Allowed Secured Claim of Maspeth Federal. The holder of the Class 1 Claim shall be paid in full in Cash on, or as soon as practicable after, the Effective Date. Interest on the Class 1 Claim will be allowed in accordance with section 506(b) of the Bankruptcy Code from the Petition Date to the Effective Date based upon a determination from this Court as to the annual rate of interest to be applied for such period.

Because the term of Maspeth Federal's mortgage loan matured in 2013, as of the Petition Date, Maspeth Federal's only legal right in respect of its claim was the right to payment. Accordingly, Maspeth Federal is not impaired, deemed to have accepted the Plan, and not entitled to vote on the Plan.

The Debtors estimate that the Class 1 Claim is approximately $350,000.

Class 2 (Impaired): Class 2 shall consist of the Allowed Secured Claim of Courtwood Capital. The holder of the Class 2 Claim shall be paid in Cash having a value, as of the Effective Date, equal to the amount of its Allowed Secured Claim over a period of seven years in semi-annual installments commencing sixty (60) days from the Effective Date. Interest on the Class 2 Claim will be allowed in accordance with section 506(b) of the Bankruptcy Code from the Petition Date to the Effective Date based upon a determination from the Bankruptcy

Court as to the annual rate of interest to be applied for such period.  Interest on the Class 2 Claim, including post-Petition Date/pre-Effective Date interest, will be allowed at a post-Effective Date rate equal to a riskless profit free rate equal to the rate of seven-year treasuries prevailing on or about the Effective Date, plus one percentage point based upon a risk factor adjustment.

The Class 2 Claim is impaired under the Plan and is entitled to vote on the Plan.

The Debtors estimate that the Class 2 Claim is approximately $2,200,000. Fairmont filed a proof of claim alleging a secured claim as of the Petition Date in the amount of $2,218,030.00.

Class 3 (Impaired):  Class 3 shall consist of the Allowed Secured Claim of EMC. The Investment Property shall be sold, subject to section 363 of the Bankruptcy Code, free and clear of the liens securing such Claim, with such liens to attach to the proceeds of such sale and such sale proceeds shall be remitted to the holder of the Class 3 Claim in full and complete satisfaction thereof at the closing of the sale.

The Class 3 Claim is impaired under the Plan and is entitled to vote on the Plan.

The Debtors estimate, based upon EMC's appraisal, that the Class 3 Claim is approximately $750,000.  EMC filed a proof of claim alleging a secured claim as of the Petition Date in the amount of $1,372,261.88.  To the extent EMC's Allowed Claim exceeds its Allowed Secured Claim, it shall have a General Unsecured Claim, referred to herein as the "**EMC Deficiency Claim**," the treatment of which as a General Unsecured Claim is discussed below.

Class 4 (Unimpaired):  Class 4 shall consist of the Allowed Secured Claim of the NYC Water Board.  The Class 4 Claim shall be paid in full in Cash on, or as soon as practicable after, the Effective Date, including post-Petition Date and pre-Effective Date interest at the

statutory rate.

The Class 4 Claim is unimpaired under the Plan, deemed to have accepted the Plan, and is not entitled to vote on the Plan.

The Debtors estimate that the Class 4 Claim is approximately $3,000.

Class 5 (Impaired):  Class 5 shall consist of Allowed General Unsecured Claims including the EMC Deficiency Claim.

The holders of Class 5 Claims shall be paid their pro rata share of $60,000 on or as soon as practicable after the Effective Date.

Class 5 Claims are impaired under the Plan and are entitled to vote to accept or reject the Plan.

The Debtors estimate that the Class 5 Claims total approximately $700,000.

 Class 6 (Unimpaired):  Class 6 shall consist of the Debtors.  Except as otherwise provided in the Plan, the Debtors shall retain their interests in the property of their estate subsequent to the Effective Date.

The Debtors are not impaired under the Plan, are deemed to have accepted it, and are not entitled to vote to accept or reject the Plan.

**It shall be conditions precedent to the occurrence of the Effective Date that (i) the Confirmation Order shall have been entered and shall have become a Final Order and (ii) the Debtors shall have received a binding loan agreement with respect to the Exit Financing.   ONLY HOLDERS OF ALLOWED CLAIMS WILL RECEIVE DISTRIBUTIONS UNDER THE PLAN.   SUCH DISTRIBUTIONS ARE IN FULL SETTLEMENT OF ALL RIGHTS OF THE HOLDERS OF SUCH ALLOWED CLAIMS, AND SUCH HOLDERS WILL NOT BE ENTITLED TO PURSUE ANY SUCH RIGHTS**

12

AS AGAINST THE DEBTORS.

B.  **Prior to the Distribution Date**

The Confirmation Order shall empower and authorize the Debtors to take or cause to be taken all actions that are necessary to enable them to implement effectively the provisions of the Plan, including, without limitation, consummating the Exit Financing.

C.  **Vesting of Property**

On the Effective Date, title to and possession of any and all property of the estate, real or personal, shall be re-vested in the Reorganized Debtors free and clear of all liens, claims, interests and encumbrances of any kind, subject to and except as otherwise provided in the Plan and the Confirmation Order.

D.  **Resolution of Disputed Claims & Reserves**

(a)    Objections.  The Debtors shall review the proofs of claim and file objections thereto within ninety (90) days after the Effective Date, provided that the Debtors may apply to the Bankruptcy Court for an extension of time to file such objections.  All timely-filed proofs of claim as to which no objection has been timely filed shall be deemed Allowed Claims.

(b)    Amendment of Claims.  A Claim may be amended after the Effective Date only as agreed upon by the Debtors and the holder of such Claim and as approved by the Bankruptcy Court or as otherwise permitted by the Bankruptcy Code and Bankruptcy Rules.

(c)    Reserve for Disputed Claims.  The Debtors shall reserve, on account of each holder of a Disputed Claim, that property which would otherwise be distributable to the holder on such date were the Disputed Claim at issue an Allowed Claim on the Effective Date, or such other property as the holder of the Disputed Claim at issue and the Debtors may agree upon. The property so reserved for the holder, to the extent that the Disputed Claim is Allowed, and

only after the Disputed Claim becomes a subsequently Allowed Claim, shall thereafter be distributed to such holder as provided below, together with appropriate interest, computed to the date of distribution.

(d)　　Distributions to Holders of Subsequently Allowed Claims. Unless another date is agreed on by the Debtors and the holder of a particular subsequently Allowed Claim, the Debtors shall, within ten (10) days after an Order resolving the Disputed Claim becomes a Final Order, distribute to such holder with respect to such subsequently Allowed Claim that amount, in cash, from the cash held in reserve for such holder and, to the extent such reserve is insufficient, from any other source of cash otherwise available to the Debtors, equal to that amount of cash which would have been distributed to such holder from the Effective Date through such distribution date had such holder's subsequently Allowed Claim been an Allowed Claim on the Effective Date.

(e)　　Disputes Regarding Rights to Payments or Distribution. In the event of any dispute between and among holders of Claims (including the individual or entity or entities asserting the right to receive the disputed payment or distribution) as to the right of any entity to receive or retain any payment or distribution to be made to such entity under the Plan, the Debtors may, in lieu of making such payment or distribution to such entity, remit the disputed portion of the Claim into an escrow account or to a distribution reserve as ordered by a court of competent jurisdiction or as the interested parties to such dispute may otherwise agree among themselves.

**E.　Amendment, Modification, Withdrawal or Revocation of the Plan.**

The Debtors reserve the right, in accordance with Section 1127 of the Bankruptcy Code, to amend or modify the Plan with such Order of the Bankruptcy Court as may be required.

14

The Debtors may withdraw or revoke the Plan prior to the Confirmation Date. If such a withdrawal or revocation occurs, or if Confirmation or the Effective Date does not occur, the Plan will be null and void. In such event, nothing contained in the Plan will constitute a waiver or release of any Claim by or against the Debtors or either one of them, or any other Person or to prejudice in any manner the rights of the Debtors or either one of them or any other Person in any further proceedings involving the Debtors.

## F.  Distributions

Payments of Cash in amounts less than $50,000 to be made pursuant to the Plan shall be made by check drawn on a separate, interest bearing domestic bank account maintained by the Disbursing Agent.  Payments of Cash in amounts of $50,000 or more shall be made by wire transfer.

## G.  Unclaimed Property

The Disbursing Agent shall use his best efforts to obtain current addresses for all claimants.  If a holder of an Allowed Claim fails to negotiate a check issued to such holder pursuant to the provisions of the Plan hereof within sixty (60) days of the date such check was forwarded to said holder or if a distribution under the Plan to any holder of an Allowed Claim is returned to the Disbursing Agent due to an incorrect or incomplete address for such holder, the Disbursing Agent, in the case of a check which was not returned and was not negotiated, shall issue a "stop payment order" in connection with non-negotiated check(s) and in the case of a check which was returned for any reason including insufficient address, the amount of Cash attributable to such check(s) will be deemed vested in the Reorganized Debtors. The payee of such non-negotiated or returned check and holder of the concomitant Claim will be deemed to have no further Claim in respect of such check and will not participate in any further

15

distributions under the Plan. The Disbursing Agent shall notify the Debtors' counsel of all returned distributions. The amount of Cash attributable to non-negotiated and returned checks shall be returned to the Disbursing Agent's escrow account for redistribution to the holders of Class 5 General Unsecured Claims, if necessary to complete payments under this Plan, and otherwise to the Debtors/Reorganized Debtors.

## H.  Plan Injunction

**On the Effective Date, all Persons who have held, hold, or may hold Claims arising on or before the Effective Date will be enjoined from taking any of the following actions with respect to such Claims: (a) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against the Debtors, any of the assets of the Debtors or any direct or indirect transferee of any assets of, or successor in interest to, the Debtors or any assets of any such transferee or successor, (b) enforcing, levying, attaching, collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against any of the Debtors, any of their assets, or any direct or indirect transferee of any assets of, or successor in interest to, the Debtors or any assets of any such transferee or successor, (c) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any lien or encumbrance of any kind against the Debtors, any of the Debtors' assets or any direct or indirect transferee of any assets of, or successor in interest to, the Debtors or any assets of any such transferee or successor, (d) asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due the Debtors, any of the Debtors' assets or any direct or indirect transferee of any assets of, or successor in interest to, the Debtors or any assets of any such transferee or successor, and (e)**

16

**proceeding in any manner in any place whatsoever that does not conform to or comply with the provisions of this Plan.**

**I. Exculpation.**

NEITHER THE DEBTORS NOR THE REORGANIZED DEBTORS, NOR ANY PROFESSIONAL PERSON EMPLOYED BY THE DEBTORS OR THE REORGANIZED DEBTORS, NOR ANY OF THEIR RESPECTIVE AGENTS (ACTING IN SUCH CAPACITY) SHALL HAVE OR INCUR ANY LIABILITY TO ANY PERSON OR ENTITY FOR ANY ACTION TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH OR RELATED TO THE FORMULATION, PREPARATION, DISSEMINATION, CONFIRMATION OR CONSUMMATION OF THE PLAN, THE DISCLOSURE STATEMENT OR ANY CONTRACT, INSTRUMENT, RELEASE OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO, OR ANY OTHER ACTION TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH THE CHAPTER 11 CASE OR THE PLAN, PROVIDED, HOWEVER, THAT NOTHING IN THE PLAN SHALL, OR SHALL BE DEEMED TO, RELEASE THE DEBTORS OR REORGANIZED DEBTORS FROM, OR EXCULPATE THE DEBTORS OR REORGANIZED DEBTORS WITH RESPECT TO, ACTIONS OR OMISSIONS TAKEN IN BAD FAITH, WILLFUL MISCONDUCT, GROSS NEGLIGENCE, BREACH OF FIDUCIARY DUTY, MALPRACTICE, FRAUD, CRIMINAL CONDUCT, UNAUTHORIZED USE OF CONFIDENTIAL INFORMATION THAT CAUSES DAMAGES, AND/OR ULTRA VIRES ACTS. IF THE PLAN IS CONFIRMED CONTAINING RELEASES OF LIABILITY AS TO THE DEBTORS AND REORGANIZED DEBTORS, CREDITORS WILL BE UNABLE TO PURSUE ANY CLAIMS THAT ARE DISCHARGED UNDER THE PLAN, BUT

17

CREDITORS CAN PURSUE CLAIMS AGAINST THE DEBTORS OR THE REORGANIZED

DEBTORS THAT MAY ARISE IN THE FUTURE, OR PURSUANT TO THE PLAN.  ANY

SUCH LIABILITY AGAINST THE DEBTORS' PROFESSSIONALS WILL NOT BE

LIMITED TO THEIR RESPECTIVE CLIENTS CONTRARY TO THE REQUIREMENT OF

DR 6-102 OF THE CODE OF PROFESSIONAL RESPONSIBILITY.

**J.  <u>Full and Final Satisfaction</u>**

       **Pursuant to the Plan, all payments and all distributions shall be in full and final satisfaction, settlement and release of all Claims, except as otherwise provided in the Plan.**

**K.  <u>Discharge</u>**

       **In accordance with section 1141(d)(5) of the Bankruptcy Code, upon the completion of all payments required under the Plan, the Debtors will be discharged from their debts that arose before the Petition Date.  Except as otherwise provided in the Plan, in section 1141 of the Bankruptcy Code, or in the Confirmation Order, (i) the occurrence of the date of discharge will operate as a discharge of all Claims against the Debtors that arose before such date and from any liability, including, without limitation, all principal of, and interest on, all indebtedness, whether accrued before, on, or after the Petition Date, (ii) the discharge of the Debtors will be effective as to each Claim, regardless of whether a proof of claim was filed or deemed filed, whether the Claim is an Allowed Claim or whether the holder thereof votes to accept this Plan, and (iii) on the date of discharge, as to every discharged debt and Claim, the holder of such debt or Claim will be permanently enjoined from asserting against the Debtors and against any of their assets, any other or further Claim based upon any document, instrument, act, omission, transaction or other**

18

activity of any kind that occurred prior to the date of discharge.  In accordance with

section 1141(d)(5) of the Bankruptcy Code, the Court shall upon the filing of a Certification

by Debtors or their counsel of the completion of all distributions required under the Plan,

grant Debtors  a discharge of all debts listed in the Debtors' Schedules and provided for in

the Plan.

**L.  Retention of Jurisdiction**

Following the Confirmation Date, the Bankruptcy Court shall retain and have

exclusive jurisdiction over the Chapter 11 Case and the Plan (whether or not an order closing the

Chapter 11 Case has been entered) with respect to, but not limited to, the following matters:

(a)  To authorize and approve the Exit Financing;

(b) To determine all controversies relating to or concerning the classification or

allowance of Claims whether existing at the Confirmation Date or occurring thereafter;

(c)    To hear and determine any and all objections to the allowance of Claims,

whether existing at the Confirmation Date or occurring thereafter;

(d)  To hear and determine requests for payment of Claims entitled to priority

under section 507(a)(2) of the Bankruptcy Code, including any and all applications for

compensation for professional and similar fees, whether existing at the Confirmation Date or

occurring thereafter;

(e)  To hear and determine any and all applications, adversary proceedings, and

contested or litigated matters over which the Bankruptcy Court has subject matter jurisdiction

pursuant to 28 U.S.C §§ 157 and 1334 that may be pending on the Confirmation Date or filed

thereafter;

(f)  To hear and determine any and all pending applications for rejection or

assumption of any executor contract and the allowance of any Claim resulting from the rejection of any executory contract pursuant to this Plan;

(g)   To hear and determine all disputed, contingent, or unliquidated Claims;

(h)   To hear and determine requests to modify the Plan pursuant to section 1127 of the Bankruptcy Code or to remedy any defect or omission or reconcile any inconsistencies in the Plan or Confirmation Order to the extent authorized by the Bankruptcy Code;

(i)   To issue such orders in aid of execution of the Plan or any provision thereof to the extent authorized by section 1142 of the Bankruptcy Code;

(j)   To hear and determine all controversies and disputes that may arise in connection with the interpretation, enforcement, or consummation of this Plan or any provision thereof from and after the Confirmation Date;

(k)   To enter and implement such orders as may be appropriate in the event that the Confirmation Order is for any reason stayed;

(l)   To consider and act on the compromise and settlement of any Claim against or cause of action by and against either of the Debtors and the Debtors' estate;

(m)   To hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes and tax benefits and similar or related matters with respect to either of the Debtors relating to the period of administration of the Chapter 11 Case;

(n)   To enforce all orders, judgments, injunctions, and rulings entered in connection with the Chapter 11 Case;

(o)   To hear and determine such other matters as may be set forth in the Confirmation Order or which may arise in connection with this Plan or the Confirmation Order; and

(p)  To enter a final decree closing this Chapter 11 Case.

**M.  Contracts and Unexpired Leases.**

Any unexpired lease or contract that is executory, in whole or in part, to which the Debtors are a party and which has not been rejected or assumed pursuant to sections 365 and/or 1123 of the Bankruptcy Code during the pendency of the Chapter 11 Case, shall be deemed rejected as of the Effective Date.  All proofs of claim with respect to any Claims arising from the rejection of executory contracts or unexpired leases must be filed with the Bankruptcy Court within thirty (30) days after the Effective Date. The failure of any such counterparty to file a proof of claim within the period proscribed shall be forever barred from asserting against the estate or the Debtors/Reorganized Debtors any claim for damages arising from the rejection of their respective executory contract or unexpired lease with the Debtors, and such Claim shall be deemed waived and discharged. The filing of any such proof of claim shall be without prejudice to any and all rights the Debtors/Reorganized Debtors may have to object to the allowance thereof on any and all available grounds.

**N.  Post-Confirmation Fees, Final Decree**

Retained professionals who perform post-Confirmation Date services for the Reorganized Debtors shall provide monthly invoices to the Reorganized Debtors describing the services rendered, and the fees and expenses incurred in connection therewith, on or before the twentieth (20th) day following the end of the calendar month during which such services were performed. Retained professionals who timely tender such invoices shall be paid by the Disbursing Agent not less than ten (10) days after the receipt of said monthly invoices, unless, within said ten (10) day period, a written objection to said payment is made by the Reorganized Debtors in which event such payment shall be made only upon an order of the Bankruptcy Court.

21

A final decree shall be entered as soon as practicable after the Plan has been substantially consummated.

**O.  Section 1146 Exemption**

To the fullest extent permitted under section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of any security under the Plan, if any, or the execution, delivery, or recording of an instrument of transfer under the Plan, including, without limitation, with respect to the Exit Financing, or the revesting, transfer, or sale of any real or other property of or to the Debtors or the Reorganized Debtors shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee.  Consistent with the foregoing, each recorder of deeds or similar official for any county, city, or governmental unit in which any instrument under the Plan is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, mortgage recording tax, intangible tax, or similar tax.

**P.  Continuation of Bankruptcy Stays**

All stays provided for in the chapter 11 case under section 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Debtors are discharged.

**Q.  Avoidance and Recovery Actions**

On and after the Effective Date, the Debtors shall have the exclusive right to commence and to continue the prosecution of all pending avoidance and other actions.  The Debtors believe, after a thorough investigation and review with its counsel, that there are no causes of action under Sections 544, 547, 548, 550 and 553 of the Bankruptcy Code, nor any other Causes of Action.  As such, the Debtors do not intend to pursue any such causes of action.

**R.  Post Confirmation Reporting Matters**

The Debtors shall file reports of their disbursements with the Bankruptcy Court on a quarterly basis, within thirty (30) days after the conclusion of each such period until the entry of a Final Decree closing the Debtors' Chapter 11 Case. Any such reports shall be prepared substantially consistent with (both in terms of content and format) the applicable Bankruptcy Court and U.S. Trustee guidelines for such matters.

**ARTICLE III.**
**FINANCIAL INFORMATION**

**A.  The Debtors' Schedules of Assets and Liabilities**

Schedules of the Debtors' assets and liabilities and monthly operating reports have been filed with the Clerk of the Court and may be inspected by all interested parties.

**B.  Sources and Uses of Cash**

A schedule reflecting the sources and uses of cash with respect to all payments to be made under the Plan is annexed hereto as Exhibit "C."

**C.  Chapter 7 Liquidation Analysis**

A liquidation analysis, showing projected liquidation proceeds and disbursements in a hypothetical chapter 7 case of the Debtors is annexed hereto as Exhibit "D."

**ARTICLE IV.**
**CONFIRMATION PROCEDURE**

**A.  Voting**

As set forth hereinabove and in the Plan, Classes 2, 3, and 5 are impaired under the Plan and are thus entitled to vote on the acceptance or rejection of the Plan.  Classes 1, 4, and 6 are not impaired under the Plan, and are conclusively presumed to have accepted the Plan.

**B. Confirmation Hearing.**

The Bankruptcy Code requires the Bankruptcy Court to hold a hearing on Confirmation of the Plan.  The Confirmation hearing has been scheduled for the date set forth on the Court Order which accompanies this Disclosure Statement.  The Confirmation hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement of the adjournment made at the Confirmation hearing.  At the Confirmation hearing, the Bankruptcy Court will (i) hear and determine any objections to the Plan and to Confirmation of the Plan; (ii) determine whether the Plan meets the requirements of the Bankruptcy Code and has been proposed in good faith; and (iii) confirm or refuse to confirm the Plan.

**C. Statutory Requirements for Confirmation of the Plan**

Before confirming the Plan, the Bankruptcy Court must determine that the Debtors have complied with the requirements of section 1129 of the Bankruptcy Code regarding the Plan, including, but not limited to, the following: (a) the Plan and its contents comply with the technical requirements of chapter 11 of the Bankruptcy Code; (b) holders of Claims are grouped into classes in a permissible fashion; (c) the Plan is feasible; and (d) the Plan has been proposed in good faith.

**THE DEBTORS BELIEVE THAT ALL SUCH REQUIREMENTS HAVE BEEN SATISFIED AND IT WILL SEEK RULINGS TO THAT EFFECT FROM THE BANKRUPTCY COURT AT THE CONFIRMATION HEARING.  THE DEBTORS RESERVE THE RIGHT TO MODIFY THE PLAN PRIOR TO AND AFTER ITS CONFIRMATION.**

1.   <u>Classification of Claims</u>

The Bankruptcy Code requires that a plan place each creditor's claim and each interest holder's interest in a class with "substantially similar" claims or interests.

The Plan establishes six (6) Classes.  Class 1 consists of the Allowed Secured Claim of Maspeth Federal, the holder of the first mortgage on the Home.  Class 2 consists of the Allowed Secured Claim of Courtwood Capital, the transferee of the Claim originally held by Fairmont, which held the second mortgage on the Home.  Class 3 consists of the Allowed Secured Claim of EMC, the holder of the mortgage on the Investment Property.  Class 4 consists of the Allowed Secured Claim of the NYC Water Board.  Class 5 consists of all General Unsecured Claims, including the EMC Deficiency Claim.  Class 6 consists of the Debtors.  The Debtors believe that the Plan's classification scheme complies with the requirements of the Bankruptcy Code and applicable case law.

2.   <u>"Best Interests of Creditors</u>

Notwithstanding acceptance of the Plan, the Bankruptcy Court must determine, independent of whether or not anyone objects to confirmation of the Plan that the Plan is in the best interests of Holders of Claims.  Generally, bankruptcy courts equate the term "best interests" with the Bankruptcy Code's requirement under section 1129(a)(7) of the Bankruptcy Code, that under any plan of reorganization, each member of an impaired class of creditors must either (a) accept the Plan or (b) receive or retain on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount such creditor would receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

Based upon the liquidation analysis, the Debtors submit that the Plan satisfies the best interests test.  Moreover, in accordance with section 1129(a)(15) of the Bankruptcy Code,

the value of the property to be distributed under the Plan exceeds the Debtors' projected disposable income (as defined in section 1325(b)(2) of the Bankruptcy Code) to be received during the seven-year period for which the Plan provides for payments to be made.

### 3. Feasibility

The Bankruptcy Code requires that in order to confirm the Plan, the Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization of the Debtors or any successor to the debtors under the Plan, unless such liquidation or reorganization is proposed in the plan and the plan contemplates the liquidation of the debtors' assets. Since the Plan contemplates receiving all of the funding necessary from the Exit Financing, confirmation of the Plan is not likely to be followed by the need for further financial reorganization of the Debtors or any successor to the Debtors under the Plan. The Exit Financing provides for adequate interest reserves to ensure that the Debtors will be able to satisfy their debt service obligations under the Exit Financing.

### 4. Fair and Equitable

The Plan is "fair and equitable" and "does not discriminate unfairly." The Plan complies with all other requirements of Chapter 11 of the Bankruptcy Code.

## D. **Cram Down**

**THE DEBTOR RESERVES THE RIGHT TO CRAM DOWN THE PLAN ON CLASS 2.**

The Bankruptcy Code contains provisions for confirmation of a plan even if all impaired classes do not accept the plan, as long as at least one impaired class of claims has accepted the plan. The "cram down" provisions of the Bankruptcy Code are set forth in section 1129(b) of the Bankruptcy Code. Under the "cram down" provisions, upon the request of a

debtor, the Bankruptcy Court will confirm a plan despite the lack of acceptance by an impaired class or classes if it finds that (i) the plan does not discriminate unfairly with respect to each non-accepting impaired class; (ii) the plan is fair and equitable with respect to each non-accepting impaired class; and (iii) at least one (1) impaired class has accepted the plan.

As used by the Bankruptcy Code, the phrases "discriminate unfairly" and "fair and equitable" have narrow and specific meanings unique to bankruptcy law.  A plan does not discriminate unfairly if claims or interests in different classes but with similar priorities and characteristics, receive or retain property of similar value under a plan.  By establishing separate Classes for the holders of each type of Claim and by treating each holder of a Claim in each class identically, the Plan has been structured so as to meet the "unfair discrimination" test of section 1129(b) of the Bankruptcy Code.

The Bankruptcy Code sets forth different standards for establishing that a plan is "fair and equitable" with respect to a dissenting class, depending on whether the class is comprised of secured or unsecured claims or interests. In general, section 1129(b) of the Bankruptcy Code permits confirmation notwithstanding non-acceptance by an impaired class if that class and all junior classes are treated in accordance with the "absolute priority" rule, which requires that the dissenting class be paid in full before a junior class may receive anything under the plan. In addition, case law surrounding section 1129(b) requires that no class senior to a non-accepting impaired class receive more than payment in full on its claims.

The Debtors reserve the right to employ the "cram down" provisions as to Class 2, because it is impaired, and it may not accept the Plan.

In order to cram down the Plan on Class 2, a secured Class, the Debtors must demonstrate to the Bankruptcy Court that the Plan provides:

27

(i) (I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and
(II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

(ii) for the sale, subject to section 363(k) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or

(iii) for the realization by such holders of the indubitable equivalent of such claims.

11 U.S.C. § 1129(b)(2)(A).

If all the applicable requirements for confirmation of the Plan are met, as set forth in sections 1129(a)(1) through 1129(a)(13) (excluding subsection 1129(a)(8)), and Class 2 rejects the Plan, the Debtors will request that the Bankruptcy Court confirm the Plan over its rejection in accordance with section 1129(b) of the Bankruptcy Code.

The Debtor believes that the Plan satisfies the "cram down" requirements of the Bankruptcy Code. Nevertheless, there can be no assurance that the Bankruptcy Court will determine that the Plan meets the requirements of section 1129(b) of the Bankruptcy Code.

## ARTICLE V.
## ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

If the Plan is not confirmed the alternatives include: (i) preparation and presentation of an alternative plan of reorganization or confirmation of Courtwood Capital's plan; (ii) liquidation of the Debtors under Chapter 7 of the Bankruptcy Code; or (iii) dismissal of the Chapter 11 case, which would result in all creditor claims and rights of collection and enforcement being restored in full.

28

1.    <u>Alternative Plan or Confirmation of Courtwood Capital's Plan</u>

If the Plan is not accepted, the Debtors or any other parties in interest could attempt to formulate a different plan of reorganization, or creditors could choose to accept the plan filed by Courtwood Capital.  The Debtors believe that the Plan (a) enables the Debtors to emerge from chapter 11 successfully and (b) provides holders of Allowed Claims with greater value or earlier recovery than they otherwise would be able to receive.  The Debtors further believe that their Plan treats holders of Claims more favorably than Courtwood Capital's proposed plan, which, the Debtors submit, is designed for Courtwood Capital's benefit exclusively.  Moreover, confirmation of the Debtors' plan would not result in the eviction of the Debtors and their five children from their Home, which is what would result from confirmation of Courtwood Capital's plan.

2.    <u>Liquidation Under Chapter 7</u>

Liquidation under chapter 7 would, as demonstrated by the liquidation analysis annexed hereto, result in distributions to creditors that would be considerably less than the distributions proposed under the Plan.

3.    <u>Dismissal</u>

Dismissal of the Chapter 11 Case would have the effect of restoring (or attempting to restore) all parties to the *status quo* before the Petition Date.  Upon dismissal, the Debtors would no longer be protected by the Bankruptcy Code, and all creditors would be free to pursue the collection of their claims against the Debtors.  This would not be a reasonable disposition of the Chapter 11 Case because it would result in a costly and uncontrolled liquidation of the Debtors' property and holders of General Unsecured Claims, in particular, would receive no distribution.

## ARTICLE VI.
## DISBURSING AGENT

The Disbursing Agent shall be Salomao Laniado. The Disbursing Agent shall not be directly liable for any distributions made in accordance with the Plan except to the extent that he maintains the Debtors' funds in escrow from which the Plan shall be funded and to the extent that the Plan provides for expense reserves. The Disbursing Agent shall not be liable to the Debtors, any creditor or any other person, firm or corporation, for any error of judgment or for any mistake of law or fact or any act done, caused to be done, or omitted to be done, by the Disbursing Agent or any of his agents, except for acts of willful misconduct, gross negligence or breach of fiduciary duty by himself or such agents.

## ARTICLE VII.
## POST-CONFIRMATION REPORTS

The Debtors shall be responsible for filing post-Confirmation reports with the Bankruptcy Court and shall pay all quarterly fees required under 28 U.S.C. § 1930 and 31 U.S.C. § 3717, on behalf of the Debtors, until the earlier of (a) conversion or dismissal of this chapter 11 case or (b) entry of a final decree closing this chapter 11 case.

## ARTICLE VIII.
## CERTAIN RISK FACTORS

**ALL HOLDERS OF CLAIMS SHOULD READ AND CAREFULLY CONSIDER THE FACTORS SET FORTH BELOW, AS WELL AS ALL OTHER INFORMATION SET FORTH OR OTHERWISE REFERENCED IN THIS DISCLOSURE STATEMENT.**

The following provides a summary of various important considerations and risk factors associated with the Plan. However, it is not exhaustive.

## A.  Certain Bankruptcy Considerations

### 1.    Parties in Interest May Object to the Debtors' Classification of Claims

Section 1122 of the Bankruptcy Code provides that a plan of reorganization may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests in such class.

The Debtors believe that the classification of Claims and the Debtors' interests complies with the requirements set forth in the Bankruptcy Code because each Class of Claims encompasses Claims that are substantially similar to the other Claims in such Class, and the Debtors are appropriately placed in their own Class.

### 2.    Risk That the Plan May Not Be Confirmed

There is no assurance that the Bankruptcy Court will confirm the Plan.  A creditor or a party in interest might challenge the adequacy of the Disclosure Statement, or any amendment thereto. Even if the Bankruptcy Court determined that the Disclosure Statement or any amendment thereto were appropriate, the Bankruptcy Court could decline to confirm the Plan if it found that any of the statutory requirements for confirmation had not been met.  Section 1129 of the Bankruptcy Code sets forth the statutory requirements for confirmation of the Plan and requires that the Bankruptcy Court find, among other things, that (a) the Plan "does not unfairly discriminate" and is "fair and equitable" with respect to any non-accepting Classes, (b) the Plan is "feasible," *i.e.,* is not likely to be followed by a liquidation or a need for further financial reorganization, and (c) the value of distributions to non-accepting holders of Claims within a particular class under the Plan will not be less than the value of distributions such holders would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

3.      The Debtors May Object to the Amount or Classification of a Claim

Except as otherwise provided in the Plan, the Debtors reserve the right to object to the

amount or classification of any Claim.  The estimates set forth in this Disclosure Statement

cannot be relied on by any holder of a Claim where such Claim is subject to an objection.  Any

holder of a Claim may not receive its specified share of the estimated distributions described in

this Disclosure Statement.

**B.  Tax Consequences of Confirmation.**

Confirmation may have federal income tax consequences for the Debtors and

holders of Claims.   The Debtors have not obtained and do not intend to request a ruling from the

Internal Revenue Service (the "IRS"), nor have the Debtors obtained an opinion of counsel with

respect to any tax matters.  Any federal income tax matters raised by Confirmation of the Plan

are governed by the Internal Revenue Code and the regulations promulgated thereunder.  The

Debtors, creditors and holders of Interests are urged to consult their own counsel and tax

advisors as to the consequences to them, under federal and applicable state, local and foreign tax

laws, of the Plan.  The federal, state and local tax consequences of the Plan may be complex in

some circumstances and, in some cases, uncertain.  Accordingly, each holder of a Claim or other

interest in estate property is strongly urged to consult with his or her own tax advisor regarding

the federal, state and local tax consequences of the Plan, including but not limited to the receipt

of cash under this Plan.


**ARTICLE IX.**
**RECOMMENDATION**

**THE DEBTORS BELIEVE THAT CONFIRMATION OF THE PLAN IS**

**PREFERABLE TO ANY OF THE ALTERNATIVES DESCRIBED ABOVE, AND IS IN**

32

**THE BEST INTERESTS OF CREDITORS.  THE PLAN WILL PROVIDE GREATER RECOVERIES THAN THOSE AVAILABLE UNDER COURTWOOD CAPITAL'S PLAN OR IN LIQUIDATION TO ALL HOLDERS OF CLAIMS.  ANY OTHER ALTERNATIVE WOULD CAUSE SIGNIFICANT DELAY AND UNCERTAINTY, AS WELL AS SUBSTANTIAL ADDITIONAL ADMINISTRATIVE COSTS.**

Dated: New York, New York
     April 9, 2015

                                    Salomao Laniado and Margalit Laniado
                                    Debtors and Debtors in Possession

                                    /s/ Salomao Laniado

                                    /s/ Margalit Laniado

ROSEN & ASSOCIATES, P.C.
Proposed Attorneys for the Debtors
and Debtors in Possession

By:  /s/ Sanford P. Rosen
      Sanford P. Rosen

747 Third Avenue
New York, NY 10017-2803
(212) 223-1100